IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE NO. |
| v. | 1:16-CR-145-TWT-JKL-1 |
| SHAUNTAY CRAIG (1) | |

## ORDER AND NON-FINAL REPORT AND RECOMMENDATION

This Order and Non-Final Report and Recommendation addresses the following pending motions filed by Defendant Shauntay Craig:

- Defendant's Preliminary Motion to Suppress [Doc. 731]

- Defendant's Motion for Bill of Particulars [Doc. 732]

- Defendant's Preliminary Motion to Suppress [Doc. 948]

- Defendant's Preliminary Motion for Severance of Defendant [Doc. 949]

- Defendant's Motion for Disclosure of Confidential Informants [Doc. 950]

- Defendant's Motion for Accelerated Disclosure of *Jencks* Act and *Giglio* Materials [Doc. 951]

– Defendant's Motion to Suppress Cell Site Data and Related Information As Well as GPS Tracking Evidence [Doc. 958]

– Defendant's Perfected Motion to Suppress [Doc. 1060]

– Defendant's Perfected Motion to Suppress Cell Site and Geo-Data Record [Doc. 1061]

These motions are addressed in the following order: (1) motions to suppress [Docs. 731, 948, 1060], which pertain to the search of a house in Louisiana where Craig was arrested; (2) motions to suppress cell site and geolocation data [Docs. 958, 1061]; (3) motion for a bill of particulars [Doc. 732]; (4) motion for severance [Doc. 949]; (5) motion for disclosure of confidential informants [Doc. 950]; and (6) motion for accelerated disclosure of *Jencks* Act and *Giglio* materials [Doc. 951]. For the reasons that follow, it is **RECOMMENDED** that the motions to suppress and the motion to sever be **DENIED**. It is further **ORDERED** that the remaining motions be **DENIED**.

I. **BACKGROUND**

Craig is charged in this case with RICO conspiracy (Count One) and conspiracy to possess with intent to distribute more than 500 grams of methamphetamine (Count Twelve). [*See* Doc. 1.] With respect to the RICO

2

conspiracy, the indictment alleges that Craig was a member of the Gangster Disciples, which the government alleges operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4). During the time period relevant to this case, Craig allegedly held the rank of "Board Member" within the Gangster Disciplines, a high-ranking position of national authority. [*Id.* at 3, 11.]

The indictment identifies the following specific overt acts that Craig is alleged to have committed in furtherance of the alleged RICO conspiracy:

- From May 2012 through August 2013, codefendant Jeremiah Covington allegedly distributed drugs, including heroin, with and for Craig. [Doc. 1 at 18 (Overt Act 5).]

- In November 2012, Craig and codefendants Alonzo Walton, Kevin Clayton and Donald Glass were allegedly involved in an extortion scheme of a rap artist. [*Id.* at 19-20 (Overt Act 12.)]

- On February 16, 2013, Craig, Clayton, Glass, and codefendant Lewis Mobely were allegedly filming a music video featuring the Gangster Disciples outside a convenience store when Jermaine Higgins stepped in front of the camera and taunted them. [*Id.* at 20 (Overt Act 15.)] It

3

is alleged that Mobely subsequently shot Higgins in the chest in retaliation.  [*Id.* (Overt Act 16).]

- Craig was the alleged owner of marijuana worth $11,000 that was found in codefendant Ronald McMorris's possession.  [*See id.* at 22-23 (Overt Acts 26-27).]

- It is alleged that Craig, codefendant Terrance Summers, and codefendant Quiana Franklin ran a "stash house" in which firearms and illegal drugs, including cocaine and marijuana, were stored.  [*Id.* at 25 (Overt Act 39).]  Allegedly, on December 25, 2013, Craig and codefendants Mangwiro Sadiki-Yisrael, and Antonio Ahmad and others secreted Franklin from law enforcement after a stash house she ran was raided by police.  [*Id.* (Overt Act 40).]

- Codefendant Antonio Ahmad allegedly owed a drug debt to Craig in March 2014.  [*Id.* at 26 (Overt Act 47).]

- On July 8, 2014, Craig and codefendant Adrian Jackson allegedly discussed supplying a new drug customer who would be buying multiple kilograms of cocaine every month.  [*Id.* at 28 (Overt Act 54).]

4

On July 26, 2014, Craig and Jackson allegedly negotiated pricing for kilograms of cocaine.  [*Id.* (Overt Act 58).]

- On July 28, 2014, Craig and codefendant Terrance Summers allegedly traveled to Memphis, Tennessee to pick up approximately 27 pound of marijuana.  [*Id.* at 29 (Overt Act 59).]

- On September 14, 2014, codefendant Charles Wingate allegedly obtained heroin from Craig.  [*Id.* (Overt Act 61).]

- On October 11, 2014, Craig, Summers, and codefendant Markell White allegedly possessed and distributed Roxycodone, a controlled substance.  [*Id.* at 30 (Overt Act 67).]

- On October 24, 2014, Summers allegedly reported to Craig that he had approximately 8 ounces of heroin remaining for sale.  [*Id.* (Overt Act 68).]

- On November 3, 2014, Craig and other Gangster Disciples members allegedly discussed their "Ladies of Distinguished Nature" prostitution service for Gangster Disciples members to use during Gangster Disciples events.  [*Id.* (Overt Act 69).]

5

- On November 13, 2014, Gangster Disciples member T.D.J. allegedly agreed to buy for resale 40 ounces of heroin and multiple pounds of mid-grade marijuana from Craig.  [*Id.* (Overt Act 71).]

- On June 11, 2015, Craig allegedly instructed Gangster Disciples members in Memphis, Tennessee, to contribute more money to the "box" (allegedly, the term used for monies previously collected from Gangster Disciples members) because of their drug sales.  [*Id.* at 33 (Overt Act 89).]

- On June 29, 2015, Craig allegedly possessed a firearm that he displayed during a drug negotiation.  [*Id.* at 33 (Overt Act 91).]

- On July 16, 2015, Craig allegedly possessed and distributed 200 Oxycodone pills.  [*Id.* at 36 (Overt Act 102).]

- On or about August 6, 2015, Craig, codefendant Alvis O'Neal and codefendant Nicholas Evans allegedly mailed approximately four pounds of methamphetamine through the U.S. Mail, with at least one pound of methamphetamine going to codefendant James Travis Riley. [*Id.* at 37 (Overt Act 109).]

- On August 12, 2015, Craig and Summers allegedly sold half a kilogram of heroin for $40,000.  [*Id.* (Overt Act 111).]

- On August 18, 2015, Craig and Summers allegedly possessed and distributed 103 grams of heroin and Craig allegedly informed the buyer that he should call Summers for all future heroin buys.  [*Id.* (Overt Act 112).]

- On September 2015, Craig, Summers, and another Gangster Disciples member allegedly possessed and distributed heroin.  [*Id.* at 39 (Overt Act 118).]

- On January 9, 2016, Craig allegedly ordered Gangster Disciples members to retaliate against individuals who robbed and shot Gangster Disciples member B.S.L. who was allegedly "working" for Craig in Roanoke, Alabama.  [*Id.* at 40 (Overt Act 128).]  On the following day, an unnamed Gangster Disciples member allegedly shot into retirement housing, where he believed the person who shot B.S.L. was visiting.  [*Id.* at 40 (Overt Act 129).]

7

- Throughout the dates alleged in this indictment, Craig and Jackson allegedly communicated regularly with incarcerated Gangster Disciples Board Members.  [*Id.* at 41 (Overt Act 131).]

## II.    MOTIONS TO SUPPRESS EVIDENCE [731, 948, 1060]

### A.    The Parties' Arguments

Craig moves to suppress evidence seized in connection with a search of a residence in Marrero, Louisiana (the "residence"), where Craig was arrested.  On September 18, 2016, law enforcement obtained and executed a search warrant at the residence to search for Craig, firearms and ammunition.  [Doc. 1060 at 3-5.] When agents arrived at the residence, an unidentified "resident" purportedly gave written consent to search the premises.  [Doc. 1060 at 1; Doc. 1105 at 1.]  Craig was arrested, and law enforcement seized two mobile telephones, three firearms, ammunition, a magazine, and a paper bag with handwriting.  [Doc. 1060 at 1.] Craig contends that the seizure of the telephones and bag was unlawful because the search warrant did not authorize the seizure of those items.  [*Id.*]  He also contends that the person who purportedly gave consent "did not claim ownership of any of the items seized, nor did he/she state whose items they were."  [*Id.*]

The government responds that Craig lacks standing to challenge the search of the residence.  [Doc. 1105 at 2-4.]  The government contends that Craig was not

8

a resident of the residence, and has not alleged any facts that, if proven, demonstrate that he had an expectation of privacy in the residence.  [*Id.* at 4.]  The government alternatively argues that the warrant was constitutional, and the search of the residence was also reasonable.  [*Id.* at 4-5.]  The government further argues that the search of the residence was lawful because the resident voluntarily consented to the search.  [*Id.* at 5-6.]

Craig replies that he is awaiting an "unredacted copy of the alleged consent reports" and is unable to determine the identity of the person who purported gave consent.  [Doc. 1176 at 1-2.]  Craig additionally reiterates his contention that the seizure exceeded the scope of the search warrant and that no valid grounds exist for the seizure.  [*Id.* at 2.]  Craig makes no rebuttal with respect to the government's standing argument.

### B.    Analysis

The Fourth Amendment of the Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  To challenge a seizure as violating the Fourth Amendment, a defendant must make the threshold showing that he has a legitimate expectation of privacy in the premises being searched—commonly referred to as "standing."  *See United States v. Gonzalez*, 940

9

F.2d 1413, 1420 n.8 (11th Cir. 1991); *see also United States v. Rodriguez-Alejandro*, 664 F. Supp. 2d 1320, 1341 (N.D. Ga. 2009), *report and recommendation adopted at* 1325.  A person has a legitimate expectation of privacy protected by the Fourth Amendment if (1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable.  *United States v. Jones*, 184 F. App'x 943, 947 (11th Cir. 2006) (citing *United States v. Miravalles*, 280 F.3d 1328, 1331 (11th Cir.2002)); *see also United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).  "Even where the defendant does not own the property searched, he may nonetheless have a reasonable expectation of privacy in that place by virtue of his relationship with that place." *United States v. Knight*, 336 F. App'x 900, 903 (11th Cir. 2009) (citing *United States v. Chaves*, 169 F.3d 687, 690 (11th Cir. 1999)).

Determining the need for a hearing on a motion to suppress is committed to the discretion of the trial court.  A "trial court may refuse a defendant's request for a suppression hearing and motion to suppress if the defendant fails to allege facts that, if proved, would require the grant of relief." *United States v. Richardson*, 764 F.2d 1514, 1526-27 (11th Cir.1985).  "A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." *Id.* at 1527; *see also United*

*States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000); *United States v. Leiva-Portillo*, No. 1:06-CR-350-WSD, 2007 WL 1706351, at *8 (N.D. Ga. June 12, 2007), *report and recommendation adopted at *2.* "Conclusory allegations and general assertions are insufficient." *Leiva-Portillo*, 2007 WL 1706351, at *8. "The law does not entitle a defendant to an evidentiary hearing based on a 'promise' to prove at the hearing that which he did not specifically allege in the motion to suppress." *Id.* (citing *Cooper*, 203 F.3d at 1285).

Applying these authorities to the circumstances of this case, the Court readily concludes that Craig's motion to suppress must be denied for lack of standing and that he is not entitled to a hearing on this matter. Craig makes no attempt whatsoever to identify what connection (if any) he has to the residence in Louisiana, much less explain how he had any expectation of privacy in that place. Craig has filed two preliminary motions, one perfected motion, and a reply in support in his motion, but at the end of the day, he has made no attempt to establish that he had an expectation of privacy in the residence. The Court therefore finds that Craig has failed to carry his burden of alleging facts that would establish his standing to challenge the search. Accordingly, it is **RECOMMENDED** that Craig's motions to suppress [Docs. 731, 948, 1060] be **DENIED**.

### III. MOTIONS TO SUPPRESS CELL SITE AND GEOLOCATION DATA [958, 1061]

Craig moves to suppress any evidence that the government seized as a result of two geo-location warrants issued by Magistrate Judge Janet King on May 4, 2016, a third geo-location warrant that the undersigned issued on May 10, 2016, and a fourth geo-location warrant that Magistrate Judge Justin S. Anand issued on September 16, 2016.  [Docs. 958, 1061.[1]]  The government opposes the motions [Doc. 1096], and Craig has filed a reply [Doc. 1176].

Craig's challenges to these warrants are without merit.  First, he argues that the warrants that Judge King issued on May 4, 2016, were defective because the probable cause for obtaining the warrants was that Craig was a fugitive.  [Doc. 1061 at 1.]  The Court finds this argument wholly unpersuasive.  Craig cites no authority for the proposition that his status as a fugitive cannot supply probable cause for obtaining a geolocation search warrant.  By contrast, the government points to numerous cases that recognize that probable cause exists to issue a warrant where there is probable cause to believe that the evidence will aid in the apprehension of the fugitive.  Based on this authority, the Court readily concludes

---

[1] Craig has not attached copies of the warrants issued by Judge King or the applications in support thereof, despite the Court's explicit instructions to do so.

12

that Craig has failed to carry his burden to show that the warrants that Judge King issued were lacking in probable cause.

To the extent that Craig intends to challenge probable cause for the issuance of the May 10 or September 16 warrants, the Court concludes that he has failed to show that probable cause was lacking for the issuance of those warrants. The warrant application for the May 10 warrant states, among other things, that on May 4, 2016, the date of the coordinated take-down in this case, Craig ceased using two mobile devices that he had been using prior to that date. [Doc. 1061 at 18.] The affidavit also detailed how law enforcement learned, based on a consensual search of a third party's device, that Craig was likely using another device. [*Id.* at 18-19.] The affidavit also explained that Craig was likely aware that a warrant had been issued for his arrest and was seeking to evade law enforcement. [*Id.* at 19.] Similarly, the affidavit supporting the application for the September 16 warrant stated that Craig was attempting to elude capture after law enforcement attempted to arrest him on May 4, 2016. [*Id.* at 31.]

Craig also challenges the validity of the geo-location warrant that Judge Anand issued in September 2016 on the basis that the affidavit failed to establish probable cause to believe that Craig was using the telephone subject to that warrant. [Doc. 1061 at 1.] This argument is also unpersuasive. The affidavit in support of

13

that warrant explained that agents familiar with Craig's voice listened to a call that Craig allegedly placed using the subject telephone. [*Id.* at 32.] The affidavit also reported that a court-authorized pen register for the phone number that received the purported call from the subject telephone indicated that the phones had been in contact at least ten times. [*Id.* at 33.] Based on the foregoing, the Court finds that the warrant application established that there was probable cause to believe that Craig was using the subject telephone.

Finally, Craig asks the Court defer ruling on his motion pending the Supreme Court's decision in *Carpenter v. United States*, in which the Court is expected to consider whether a warrant is required to obtain historical cell site records. *See Carpenter v. United States,* Dkt. No. 16-402, __ U.S. __, 137 S. Ct. 2211, 198 L.Ed.2d 657 (2017). It is not altogether clear that a decision in *Carpenter* would have any bearing on Craig's case as he has limited his motion to a challenge of geolocation warrants. Nonetheless, out of an abundance of caution, the Court agrees with the government that it is appropriate to deny Craig's challenge based on *Carpenter* without prejudice to his ability to renew the issue should the Court decide the case in a way that provides him a colorable basis for suppression.

Accordingly, it is **RECOMMENDED** that Craig's motions to suppress cell site and geolocation data [Docs. 958, 1061] be **DENIED WITHOUT**

**PREJUDICE** to move for suppression based on the Supreme Court's forthcoming opinion in *Carpenter*.

## IV.   MOTION FOR BILL OF PARTICULARS [732]

In his motion for a bill of particulars, Craig requests that the government "state with specificity what [Craig] purportedly did" and prepare a bill of particulars "showing places, dates, times, individuals, etc." that support each of Count One, Count Twelve, and Overt Acts 12, 26, 27, 39, 40, 54, 58, 61, 64, 69, 71, 89, 91, 102, 109, 111, 112, 118, and 128. [Doc. 732 at 1-4.]

The government generally responds that Craig's requests are an improper attempt to obtain discovery. [Doc. 846 at 4-9.] The government additionally provides some detail in its response and directs Craig to particular evidence produced in discovery for further information. [*Id.*]

Federal Rule of Criminal Procedure 7(f) explains that:

> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f). The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his

15

defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017) (citation omitted).  A bill of particulars may not be used for the purpose of obtaining detailed disclosure of the government's case or evidence in advance of trial.  *See United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973).  "Nor is the defendant entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection."  *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986), *modified on other grounds by*, 801 F.2d 378 (11th Cir. 1986).

Craig's requests are extraordinarily broad and, quite obviously, are intended to obtain discovery.  Nonetheless, the government has provided information in response to the motion, and in many instances, has directed him to specific documents and intercepted calls.  To the extent that the government did not provide as much detail concerning overt acts as Craig requested, the Court finds that more precise information is not warranted here.  *See United States v. Henley*, No. 1:16-cr-151-LMM-JFK, 2017 WL 2952821, at *16 (N.D. Ga. May 19, 2017) (denying motion for bill of particulars seeking details concerning overt acts taken in furtherance of extortion and drug conspiracies), *report and recommendation*

*adopted*, 2017 WL 2918954 (N.D. Ga. July 7, 2017); *United States v. Reid*, No. 3:09-CR-312-J-34TEM, 2010 WL 2653229, at *2 (M.D. Fla. July 2, 2010) (denying request for bill of particulars to specify date when alleged conspiracy was formed and the date on which each defendant joined conspiracy where indictment provided the purpose of the alleged conspiracy, the participation of the defendant in the conspiracy, and the overt acts that defendant allegedly committed, as well as approximate dates of activity); *see also Leiva-Portillo*, 2007 WL 1706351, at *14-15 (denying motion for bill of particulars where government represented that it had provided extensive discovery materials to defendant responsive to the requests made and that information "sufficiently advise[d] [d]efendant of the specific conduct for which [he] is being prosecuted"). While additional information may be helpful to Craig, he has failed to carry his burden to demonstrate that additional details are necessary to enable him to prepare his defense, avoid surprise, or plead double jeopardy in a subsequent proceeding. *See United States v. Giffen*, 379 F. Supp. 2d 337, 346 (S.D.N.Y. 2004) ("The ultimate test in deciding whether a bill of particulars should be ordered is whether the information sought is necessary, as opposed to helpful, in preparing a defense."). Accordingly, Craig's Motion for a Bill of Particulars [Doc. 732] is **DENIED**.

17

## V.    MOTION FOR SEVERANCE [949]

### A.    The Parties' Arguments

Craig moves to sever the trial against him from all other co-defendants on the grounds that the charges in this case are improperly joined and that there is "great danger of prejudicial spillover because of this improper joinder." [Doc. 949 at 1.]  He also argues that there is a "probability" that a problem under *Bruton v. United States*, 391 U.S. 123 (1968), will arise in this case.  [*Id.* at 2.]

The government responds that Craig is properly joined as a defendant in this case because he is charged as the alleged leader of the Gangster Disciples and a national Board Member.  [Doc. 1017 at 6.]  The government also argues that at trial, it will show that Craig committed overt acts in furtherance of the alleged RICO conspiracy with numerous codefendants in this case.  [*Id.*]  The government further argues that Craig has not demonstrated that he will receive an unfair trial and suffer prejudice if tried together with co-defendants.  [*Id.* at 12-13.]  The government maintains that any danger of prejudicial spillover can be cured with a cautionary instruction to the jury.  [*Id.* at 11-12.]  Finally, the government contends that Craig's *Bruton* argument is premature, as he has not identified a codefendant's statement that would give rise to a *Bruton* problem.  [*Id.* at 13-14.]

18

B.      Discussion

1.      Craig is Properly Joined as a Defendant

The Court's analysis begins with the threshold issue of whether joinder of Craig as a defendant in this case is proper.  Federal Rule of Criminal Procedure 8(b) provides that joinder of defendants is proper "if they are alleged to have participated in the same . . . series of acts or transactions constituting an offense or offenses."  To meet the "same series of acts or transaction" requirement of Rule 8(b), the government must demonstrate that the acts alleged are united by substantial identity of facts or participants; however, there is no requirement that each participant participate in all acts or even know the other participants' roles in the alleged activities.  *United States v. Holloway*, 971 F.2d 675, 679 (11th Cir. 1992).

It is well-established that joinder is proper where, as here, the indictment charges multiple defendants with participation in a single conspiracy.  *See United States v. Alvarez*, 755 F.2d 830, 857 (11th Cir. 1985).  The general rule is that defendants indicted together should be tried together, especially in conspiracy cases.  *United States v. Chavez*, 584 F.3d 1354, 1360 (11th Cir. 2009).  "Joint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials,

19

lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources." *United States v. Lopez*, 649 F.3d 1222, 1233 (11th Cir. 2011).

In this case, the indictment alleges that Craig participated in the alleged RICO and drug trafficking conspiracies charged in Counts One and Twelve. The indictment also identifies numerous overt acts that Craig allegedly took in furtherance of the conspiracies with codefendants. Rule 8(b) is a pleading rule, and courts look to the indictment to determine whether joinder is proper under that rule. *See United States v. Liss*, 265 F.3d 1220, 1227 (11th Cir. 2001); *United States v. Melvin*, 143 F. Supp. 3d 1354, 1363 (N.D. Ga. 2015). Based on the allegations in the indictment, the Court readily concludes that joinder is proper under the "same series of acts or transaction" requirement of Rule 8(b).

Having found that Rule 8(b) is satisfied, the Court next turns to whether the potential prejudice to Craig at trial warrants severance. Federal Rule of Criminal Procedure 14 allows for severance if it appears that a defendant will be prejudiced by a joinder of offenses or defendants. "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534,

20

539 (1993). The Eleventh Circuit has explained that "[s]everance . . . is "warranted only when a defendant demonstrates that a joint trial will result in 'specific and compelling prejudice' to his defense." *Liss,* 265 F.3d at 1228 (citation omitted). "Compelling prejudice occurs when the jury is unable 'to separately appraise the evidence as to each defendant and render a fair and impartial verdict.'" *Id*. (quoting *United States v. Meester*, 762 F.2d 867 (11th Cir.1985)). Cautionary instructions to the jury are presumed to adequately safeguard against prejudice. See *Lopez*, 649 F.3d at 1235 (cautionary instructions to the jury "ordinarily will mitigate the potential spillover effect of evidence of a co-defendant's guilt").

The Court is not persuaded that the nature and circumstances of Craig's alleged involvement in the conspiracies charged in this case warrants severance under Rule 14. Indeed, Craig makes no showing of any specific and compelling prejudice that would mandate severance argument. To the extent that he contends that a jury would unfairly ascribe the conduct of others to him, that argument is unpersuasive. As the Eleventh Circuit has explained, the general rule favoring joinder of defendants who have been indicted together applies to coconspirators, even if one defendant had a lesser level of participation in the conspiracy. *United States v. Leavitt*, 878 F.2d 1329, 1340 (11th Cir. 1989) ("In a conspiracy case, coconspirators should usually be tried together; the fact that a defendant only

participated in one aspect of the conspiracy does not by itself warrant severance."). Here, Craig is alleged to have been one of the leaders in the conspiracy, so it stands to reason that, if a low-level actor can be tried with alleged co-conspirators, then the defendant with more substantial involvement should be as well. To the extent there is any risk of spillover, Craig has not demonstrated that the risk cannot be cured through limiting instructions to the jury. *See Zafiro*, 506 U.S. at 539. Accordingly, at this point, the Court concludes that Craig has not carried his burden to show that severance due to prejudicial spillover is warranted.

### 2.     Severance Based on *Bruton*

In *Bruton*, the Supreme Court held that post-arrest statements made by a non-testifying co-defendant that incriminate other defendants are inadmissible because such statements violate the other defendants' Sixth Amendment rights to confront and cross-examine adverse witnesses. 391 U.S. at 126. Craig has not identified any specific statement or testimony that might be offered at trial that would create a problem under *Bruton*, nor has he identified any co-defendant who made a statement or whether such defendant is going to trial. Thus, at this point, the Court is unable to evaluate the motion and the appropriateness of any remedial efforts that could be taken at trial to avoid a *Bruton* problem. Accordingly, it is recommended that the Craig's motion to sever be denied at this time.

22

## C.   Summary

In sum, it is **RECOMMENDED** that Craig's Motion for Severance of Defendant [Doc. 949] be **DENIED** at this time.  It bears mentioning, however, that severance is within the discretion of the trial judge, who must ultimately balance the efficient and orderly presentation of the case with the possibility of prejudice to defendants and the ability to cure such prejudice with instructions.  This is a complex case involving many defendants and issues may arise as this matter moves toward trial that may justify another look at severance of this and other defendants for trial.   Although I recommend denying the motion at this stage in the proceedings, the trial judge may, of course, revisit the question of severance closer to trial.  *See United States v. Alcindor*, No. 1:05-CR-0269-TWT-CCH, 2005 WL 8148993, at *5 (N.D. Ga. Dec. 7, 2005) (denying motion for severance but noting that severance is within the province of the trial judge), *report and recommendation adopted*, 2006 WL 8426658 (N.D. Ga. Mar. 10, 2006).

## VI.   MOTION FOR DISCLOSURE OF CONFIDENTIAL INFORMANTS [950]

Craig moves for the disclosure of "all names, addresses, and other identifying and contact information on any informants used in this case."  [Doc. 950.]

It is well-established that the government has a limited privilege to withhold the identity of law enforcement informants. *Roviaro v. United States*, 353 U.S. 53, 59 (1957). The purpose of this privilege "is the furtherance and protection of the public interest in effective law enforcement." *Id.* But where the disclosure of an informant's identity or the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the trial court may require disclosure. *Id.* at 60-61. In balancing these interests, the Court must take into account "the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony." *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991). Courts in this Circuit consider the following three factors in evaluating whether the government should be required to reveal the identity of informants: "(1) the extent of the CI's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the CI; and (3) the government's interest in nondisclosure." *United States v. Razz*, 240 F. App'x 844, 847 (11th Cir. 2007) (citing *Gutierrez*, 931 F.2d at 1490).

The concerns in *Roviaro* are generally inapplicable, however, where the government intends to call the informant as a witness at trial. *See Banks v. Dretke*, 540 U.S. 668, 697 (2004) ("The issue of evidentiary law in *Roviaro* was whether

(or when) the Government is obliged to reveal the identity of an undercover informer the Government does *not* call as a trial witness."); *United States v. Rook*, No. 1:15-CR-380-SCJ, 2016 WL 2344877, at *3 (N.D. Ga. May 3, 2016); *United States v. Pineda*, No. 1:11-CR-00006-CAP-JFK, 2012 WL 2906758, at *44 (N.D. Ga. June 4, 2012) ("Neither the Federal Rules of Criminal Procedure, *Brady*, the *Jencks* Act, or *Giglio* require the disclosure of information related to a testifying witness any earlier than the Government has offered to make disclosure in this case."), *adopted by* 2012 WL 2907447 (N.D. Ga. July 16, 2012).

Here, the government has indicated that it intends to call the confidential informant relating to the charges against Craig as a witness during the trial and will disclose the identity of the informant prior to the trial and provide any related *Jencks* Act, *Brady*, and *Giglio* materials related to the confidential informant. [Doc. 997 at 6.] In light of this representation, the Court will not require the government to disclose the identity of such confidential informant at this time.

The Court additionally concludes that Craig has not met the second *Roviaro* factor—*i.e.*, a direct relationship between his defense and the probable testimony of the informant. The burden is on the defendant to show that the informant's testimony would significantly aid in establishing an asserted defense. *United States v. Johnson*, --- F. App'x ---, 2017 WL 2954570, at *1 (11th Cir. July 11, 2017)

(citing *Gutierrez*, 931 F.2d at 1491).  "Mere conjecture about the possible relevance of the testimony is insufficient to compel disclosure."  *Id*.

Craig only generally avers it is necessary for him "to have this information under the Fifth and Sixth Amendments to the United States Constitution as well as *Brady v. Maryland*, 373 U.S. 83 (1963)."  [Doc. 950 at 1.]  This is insufficient.  He has not indicated what information he believes that he would obtain from the confidential informant or why it would materially support his defense.  In fact, he does not specify what defense that might be.   As to Craig's contention that he must have access to the confidential informant under *Brady* (presumably to determine whether the informant might provide exculpatory information), the Court notes that the government is bound by *Brady* to provide such information.

For the foregoing reasons, *Roviaro* does not require disclosure of the confidential informant's or informants' identity or identities at this time.  Craig's motion for disclosure of confidential informants is therefore **DENIED**.  [Doc. 950.]

## VII. MOTION FOR ACCELERATED DISCLOSURE OF *JENCKS* ACT AND *GIGLIO* MATERIALS [951].

Craig moves the Court to order the government to disclose all *Jencks* Act and *Giglio* material be made available at least four months before trial because the discovery in this case is "overwhelming."  [Doc. 951 at 1.]

26

With respect to *Jencks* Act material, the government responds that the Court is not authorized to compel the government to disclose such material early. [Doc. 1016 at 1-2.] The government is correct. The *Jencks* Act plainly requires that a witness statement be produced only after the witness testifies. 18 U.S.C. § 3500(b).[2] There is no authority for the Court to grant an early release or disclosure of that material. *See United States v. Jordan,* 316 F.3d 1215, 1227 n.17, 1251 & n.78 (11th Cir. 2003); *United States v. Jones,* No. 1:05-CR-617-WSD, 2007 WL 2071267, at *14 (N.D. Ga. July 19, 2007) ("The *Jencks* Act materials . . . are not subject to disclosure until the government witness testifies at trial on direct examination, or earlier if the government agrees."), *adopted at* *3-4.[3]

_____

[2] The *Jencks* Act provides in relevant part as follows:

> ***After a witness called by the United States has testified on direct examination***, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the ***witness has testified***. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(b) (emphasis added).

[3] The government represents that the cooperating witnesses are expected to testify at trial and that it will provide *Jencks* Act material pertaining to witnesses around 14 days before the witness testifies. [Doc. 1016 at 3.]

With regard to *Giglio*, the government correctly points out that "a defendant does not generally have a right to early disclosure of impeaching information," and here, the government's "agreement to abide by its *Brady*, *Jencks* and *Giglio* obligations . . . [is] sufficient." *Pineda*, 2012 WL 2906758, at *44,. The government also objects to producing *Giglio* material because early disclosure may endanger the safety of witnesses. The government specifically points to the nature of the acts alleged in the indictment, including retaliation against witnesses. [Doc. 1016 at 4.]

The Court agrees with the government. The Court's pretrial scheduling order directs the government to provide all materials and information in compliance with its obligations under *Giglio*. [Doc. 272 at 6.] The scheduling order further provides that a party can request a modification of this standard ruling by filing a particularized motion for relief. [*Id.* at 5.] Here, Craig's sole reason for seeking accelerated disclosure of *Giglio* materials is that discovery is "overwhelming" and there is no real indication as to why four months' time is required. Moreover, the government has indicated that it will provide *Jencks* Act material approximately 14 days before the witness testifies, and the Court presumes that the government intends to disclose any *Giglio* materials at that time as well, if not earlier. Absent

28

a more particularized showing as to why *Giglio* material is needed four months in advance of trial, the Court will deny the motion.

Accordingly, the Court **DENIES** Craig's Motion for Accelerated Disclosure of *Jencks* Act and *Giglio* Materials [Doc. 1016].

## VIII.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that

- Defendant's Preliminary Motion to Suppress [Doc. 731], Defendant's Preliminary Motion to Suppress [Doc. 948], and Defendant's Perfected Motion to Suppress [Doc. 1060] be **DENIED**;

- Defendant's Motion to Suppress Cell Site Data and Related Information As Well as GPS Tracking Evidence [Doc. 958] and Defendant's Perfected Motion to Suppress Cell Site and Geo-Data Record [Doc. 1061] be **DENIED WITHOUT PREJUDICE**; and

- Defendant's Preliminary Motion for Severance of Defendant [Doc. 949] be **DENIED**.

It is further **ORDERED** that Defendant's Motion for Bill of Particulars [Doc. 732], Defendant's Motion for Disclosure of Confidential Informants [Doc.

950], and Defendant's Motion for Accelerated Disclosure of Jencks Act and Giglio Materials [Doc. 951] be **DENIED**.

There are no matters pending for Defendant Craig (1), and the Court has not been advised of any impediments to the scheduling of a trial as to this defendant. Accordingly, this matter as to this defendant is **CERTIFIED READY FOR TRIAL**.[4]

**IT IS SO ORDERED, RECOMMENDED AND CERTIFIED** this 26th day of October, 2017.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

[4] Since matters pertaining to Craig's codefendants still are pending, the District Court is not required to place Craig's case on the trial calendar at this time. 18 U.S.C. § 3161(h)(6).