IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

SHAUNTAY CRAIG

CRIMINAL ACTION FILE NO.

1:16-CR-145-TWT-JKL-1

**ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

This Order and Non-Final Report and Recommendation addresses Defendant Shauntay Craig's Motion to Dismiss Indictment on Grounds of Entrapment, [Doc. 2272], and his Motion to Reveal Identity of Confidential Informants [Doc. 2302], which have been referred to me. The government has responded to both motions [Docs. 2485, 2496], and the time to file any reply has expired. For the reasons that follow, it is **RECOMMENDED** that the motion to dismiss on grounds of entrapment be **DENIED** without prejudice to Craig's ability to raise a defense of entrapment at trial. The motion to reveal confidential informants is **DENIED**.

I.     **BACKGROUND**

Craig is charged in this case with RICO conspiracy (Count One) and conspiracy to possess with intent to distribute more than 500 grams of

methamphetamine (Count Twenty-Three).  [*See* Doc. 1750 at 1-46, 55-56.]  With respect to the RICO conspiracy, the indictment alleges that Craig was a member of the Gangster Disciples, which the government alleges operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4).  During the time period relevant to this case, Craig allegedly held the rank of "Board Member" within the Gangster Disciplines, a high-ranking position of national and regional authority, subordinate only to the "Chairman."  [*Id.* at 3-4, 11.]

The second superseding indictment identifies the following overt acts that Craig is alleged to have committed in furtherance of the alleged RICO conspiracy:

- From 2011 through 2016, Craig and codefendants Alvis O'Neal and Condelay Abbitt allegedly consolidated Craig's "national authority by organizing and managing a network for distributing large quantities of high-grade marijuana, heroin, and methamphetamine to Gangster Disciples in approximately sixteen states." [Doc. 1750 at 19 (Overt Act 5).]

- From around May 2012 through August 2013, Craig allegedly distributed drugs, including heroin, with fellow gang member J.C. [*Id.* at 19 (Overt Act 6).]

2

- Beginning around November 2012, Craig and other Gangster Disciples members allegedly threatened rapper R.R. with physical harm unless R.R. paid the Gangster Disciples for the use of the gang's name and symbols.  [*Id.* at 20 (Overt Act 13).]

- In 2013, Craig and codefendant Damien Madison allegedly supplied five pounds of marijuana to Gangster Disciples member D.G.  [*Id.* at 21 (Overt Act 16).]

- In January 2013, Craig allegedly "orchestrated a plot to murder Debbie Marie McGaughy to prevent her from testifying against Gangster Disciples member R.G."  [*Id.* (Overt Act 18).]

- On February 16, 2013, Craig and codefendants Lewis Mobley, Kevin Clayton, Donald Glass, and Roy Farrell, among others, were allegedly filming a music video featuring the Gangster Disciples outside a neighborhood convenience store when a 17-year-old stepped in front of the camera and taunted them.  [*Id.* at 21-22 (Overt Act 20.)]  It is alleged that Mobely subsequently shot the 17-year-old in the chest in retaliation.  [*Id.* at 22 (Overt Act 21).]

3

- Craig was the alleged owner of multiple pounds of marijuana, worth $11,000, that police found in codefendant Ronald McMorris's possession. [*See id.* at 24 (Overt Acts 31-32).]

- It is alleged that codefendant Alonzo Walton told Craig and others that he (Walton) was teaching an insurance fraud scheme to Georgia-based Gangster Disciples as a way for the gang to make money. [*Id.* at 25-26 (Overt Act 39).]

- It is alleged that in late December 2013, Craig, along with codefendants Terrance Summers, and Quiana Franklin, ran a "stash house" in which firearms and illegal drugs, including cocaine and marijuana, were stored. [*Id.* at 26-27 (Overt Act 44).] Allegedly, on December 25, 2013, Craig and codefendants Alonzo Walton, Mangwiro Sadiki-Yisrael, and Antonio Ahmad, along with others, secreted Franklin from law enforcement after a stash house she ran was raided by police. [*Id.* at 27 (Overt Act 45).]

- Allegedly, on January 27, 2014, Craig and other leaders of the Gangster Disciples held a conference call to discuss outstanding drug

4

debts owed by Gangster Disciples in various states.  [*Id.* at 27 (Overt Act 49).]

- Codefendant Antonio Ahmad allegedly owed a drug debt to Craig in March 2014, which Ahmad paid off with money obtained during a carjacking on or around March 20, 2014.  [*Id.* at 28 (Overt Act 53).]

- On July 8, 2014, Craig and codefendant Adrian Jackson allegedly discussed supplying a new drug customer, who would be buying multiple kilograms of cocaine every month.  [*Id.* at 29 (Overt Act 60).] Thereafter, on July 26, 2014, Craig and Jackson allegedly negotiated pricing for kilograms of cocaine.  [*Id.* at 30 (Overt Act 64).]

- On July 28, 2014, Craig and Summers allegedly traveled to Memphis, Tennessee to pick up approximately 27 pounds of marijuana.  [*Id.* (Overt Act 65).]

- On September 14, 2014, codefendant Charles Wingate allegedly obtained heroin from Craig.  [*Id.* (Overt Act 67).]  On October 8, 2014, Wingate allegedly ordered additional heroin from Craig for resale. [*Id.* at 31 (Overt Act 71).]

- On October 11, 2014, Craig, Summers, and codefendant Markell White allegedly possessed and distributed Roxycodone, a controlled substance.  [*Id.* at 31 (Overt Act 73).]

- On October 24, 2014, Summers allegedly reported to Craig that he had approximately 8 ounces of heroin remaining for sale.  [*Id.* (Overt Act 74).]

- On November 3, 2014, Craig and other Gangster Disciples members allegedly discussed their "Ladies of Distinguished Nature" prostitution service for Gangster Disciples members to use during Gangster Disciples events.  [*Id.* (Overt Act 75).]

- On November 13, 2014, Gangster Disciples member T.D.J. allegedly agreed to buy for resale 40 ounces of heroin and multiple pounds of marijuana from Craig.  [*Id.* at 32 (Overt Act 77).]

- On June 11, 2015, Craig allegedly instructed Gangster Disciples members in Memphis, Tennessee, to contribute more money to the "box" (allegedly, the term used for monies previously collected from Gangster Disciples members) based upon their drug sales.  [*Id.* at 34 (Overt Act 94).]

6

- On June 29, 2015, Craig allegedly possessed a firearm that he displayed during a drug negotiation. [*Id.* at 35 (Overt Act 97).]

- On July 16, 2015, Craig allegedly possessed and distributed 200 Oxycodone pills. [*Id.* at 37 (Overt Act 108).]

- On or about August 6, 2015, Craig and O'Neal, along fellow gang member N.E., allegedly mailed approximately four pounds of methamphetamine through the U.S. Mail, with at least one pound of methamphetamine going to codefendant James Travis Riley. [*Id.* at 38 (Overt Act 115); *see also id.* at 55-56 (Count Twenty-Three).]

- On August 12, 2015, Craig and Summers allegedly sold half a kilogram of heroin for $40,000. [*Id.* at 39 (Overt Act 117).]

- On August 18, 2015, Craig and Summers allegedly possessed and distributed 103 grams of heroin, and Craig allegedly informed the buyer that he should call Summers for all future heroin buys. [*Id.* (Overt Act 118).]

- From the fall of 2015 through May 2016, Craig and codefendants Abbitt and Mario Jackson allegedly made multiple trips to Louisiana

to buy multi-kilogram quantities of heroin from a drug supplier, N.G. [*Id.* at 40, 42 (Overt Acts 124, 138).]

- On September 2015, Craig, Summers, and another Gangster Disciples member allegedly possessed and distributed heroin. [*Id.* (Overt Act 125).]

- On January 9, 2016, Craig allegedly ordered Gangster Disciples members to retaliate against individuals who robbed and shot Gangster Disciples member B.S.L., who was allegedly working for Craig in Roanoke, Alabama. [*Id.* at 42 (Overt Act 135).] The following day, an unnamed Gangster Disciples member allegedly shot into retirement housing, where he believed the person who shot B.S.L. was visiting. [*Id.* (Overt Act 136).]

- Allegedly, beginning April of 2016, Mario Jackson and others secretly transported Craig between states in an attempt to prevent Craig's arrest on federal racketeering charges. [*Id.* (Overt Act 137).]

- In May 2016, Craig allegedly connected Mario Jackson and Farrell to N.G. in order to make money to pay down Craig's drug debts to the N.G.; and thereafter, N.G. provided Mario Jackson with heroin and

cocaine, and provided Farrell with methamphetamine.  [*Id.* (Overt Act 138).]

- Throughout the dates alleged in the second superseding indictment, Craig and Adrian Jackson allegedly communicated regularly with incarcerated Gangster Disciples Board Members.  [*Id.* at 43 (Overt Act 142).]

The second superseding indictment's charge against Craig of conspiracy to possess with intent to distribute more than 500 grams of methamphetamine is based upon Craig's alleged conduct on August 6, 2015, in mailing approximately four pounds of methamphetamine through the U.S. Mail.  [*Id.* at 38 (Overt Act 115); *see also id.* at 55-56 (Count Twenty-Three)].

## II.   MOTION TO DISMISS ON GROUNDS OF ENTRAPMENT

The Court first addresses Craig's motion to dismiss on grounds of entrapment.  "Entrapment is an affirmative defense, evidence of which must be presented before the issue is considered to be properly raised."  *United States v. Quinn*, 123 F.3d 1415, 1423 (11th Cir. 1997).  "The entrapment defense involves two separate elements: (1) [g]overnment inducement of the crime, and (2) lack of predisposition on the part of the defendant."  *United States v. Isnadin*, 742 F.3d 1278, 1297 (11th Cir. 2014) (citing *Mathews v. United States*, 485 U.S. 58, 63

(1988) and *United States v. Costales*, 5 F.3d 480, 487 (11th Cir. 1993)).  The defendant bears the burden of production to show that the first element is met.  *Id.* (citing *United States v. Ventura*, 936 F.2d 1228, 1230 (11th Cir. 1991)).  "Once the defendant makes this initial showing, the burden shifts to the [g]overnment to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime."  *Id.*  (citing *Ventura*, 936 F.2d at 1230 and *United States v. Brown*, 43 F.3d 618, 623 (11th Cir. 1995)).  "Predisposition is a question for the jury and 'is necessarily a fact-intensive, subjective inquiry into a defendant's state of mind' that considers many kinds of evidence about the defendant's conduct."  *United States v. Man*, 891 F.3d 1253, 1270 (11th Cir. 2018) (quoting *Isnadin*, 742 F.3d at 1298); *see also United States v. Rutgerson*, 822 F.3d 1223, 1235 (11th Cir. 2016) ("Predisposition is a fact-intensive and subjective inquiry, requiring the jury to consider the defendant's readiness and willingness to engage in the charged crime absent any contact with the government's agents.") (citing *Jacobson v. United States*, 503 U.S. 540, 548-49 (1992) and *Brown*, 43 F.3d at 624).

Because of this fact-intensive nature of the defense, dismissal of criminal charges based on entrapment is rarely appropriate for pretrial disposition.  *United States v. McGill*, No. 1:14-CR-167-WSD, 2014 WL 4829303, at *5 (N.D. Ga. Sept. 29, 2014) ("A defense of entrapment is generally not appropriate at the pretrial

10

stage because it is a fact intensive inquiry."), *aff'd*, 634 F. App'x 234 (11th Cir.

2015).  As the court explained in *McGill*,

> [T]he presence or absence of predisposition is for the jury
> to determine as part of its function to deci[de] the guilt of
> the accused.  An entrapment defense is a question for the
> jury, unless the evidence is so clear and convincing that
> it may be ruled on by a trial judge as a matter of law.
> Accordingly, entrapment is not an appropriate issue to
> consider in a pre-trial motion to dismiss the indictment.

*Id.* (citations omitted).

Without identifying any particular evidence or specific factual allegations in

the second superseding indictment, Craig asserts that the charges against him in

this case should be dismissed on the grounds of entrapment because he was induced

by the government and was not predisposed to commit the charged offenses.  [Doc.

2272 at 5-6.]  He contends that a "highly motivated" informant "originated the

criminal design," and then approached him and asked him to engage in unlawful

activities.  [*Id.* at 5.]  He contends that the informant called him "multiple dozens"

of times, trying to pressure Craig into selling him drugs, and used "mutual contacts"

to persuade Craig to meet with the informants.  [*Id.*]  Craig asserts that "[a]t no time

did [he] engage in any act that showed an independent willingness to engage in

criminal behavior free from the inducement of government officials" and that there

is no evidence that he would have engaged in the charged conduct had he not been

11

induced to act.  [*Id.* at 5-6.]  Based upon this, Craig argues that "it is clear that [he] had no interest in conducting any illegal transactions" and that "[t]here is no evidence that the government can provide to show that the Defendant was predisposed to commit the charged offense [of] possession with intent to distribute or sale of illegal drugs."  [*Id.* at 6.]  He concludes:  "given the fact that the Defendant has shown, clearly and convincingly, that he was induced by the government's informants, this issue of entrapment may be determined, as a matter of law, in the Defendant's favor."  [*Id.*]

Craig's arguments are not persuasive.  For starters, Craig cites no case in which a court has dismissed charges on an entrapment defense before trial based on circumstances even remotely similar to the case at bar.  In the one case Craig cites for the proposition that entrapment may be decided as a matter of law (that is without being submitted to a jury), the defendant provided "extensive testimony" by multiple witnesses on the issue of entrapment during a pretrial hearing, and the government failed to offer any rebuttal evidence.  *See United States v. Graves*, 556 F.2d 1319, 1320 (5th Cir. 1977).  The *Graves* decision did not suggest that it was appropriate to resolve an entrapment defense without clear and convincing evidence being presented.  *Id.* at 1321-23.  To the contrary, the Eleventh Circuit has made clear that determining entrapment as a matter of law tests the sufficiency

12

of evidence only *after* it has been presented. *United States v. Gates*, 351 F. App'x 362, 366 (11th Cir. 2009). And multiple district court opinions have reiterated that no case has been found in the Eleventh Circuit in which entrapment has been determined as a matter of law before the case has gone to trial. *See United States v. Williams*, No. 3:16-cr-3-TCB-RGV, 2016 WL 10649420, at *12 (N.D. Ga. Oct. 19, 2016), *report and recommendation adopted*, 2017 WL 1030804 (N.D. Ga. Mar. 16, 2017*); see also United States v. Williams*, No. 6:13-cr-26-Orl-36TBS, 2014 WL 117091, at *4 (M.D. Fla. Jan. 13, 2014).

In addition, Craig's *ipse dixit* assertion that the government has "no evidence" that he was predisposed to commit the criminal conduct charged in this case is unavailing. The government proffers that at trial it will produce numerous wire intercepts on which Craig and his alleged co-conspirators admitted to criminal conduct and that it will introduce testimony from witnesses who were not acting as government agents who had "criminal contact with Craig." [Doc. 2485 at 3-4.] Moreover, the indictment alleges that Craig held an upper leadership position within the Gangster Disciples organization and that he was involved in a variety of criminal activities over a period of many years. His unsupported assertions of inducement and coercion simply do not meet the substance of the allegations against him in this case.

13

Suffice it to say, this is not the rare case where the Court could grant what is akin to summary judgment in favor of the defendant on the defense of entrapment. Accordingly, it is **RECOMMENDED** that Craig's motion to dismiss be **DENIED** without prejudice to raise the defense of entrapment at trial.[1]

## III.   MOTION TO REVEAL CONFIDENTIAL INFORMANTS

Craig also moves for an order compelling the government to disclose the identity of its confidential informants that were used in this case.  [Doc. 2302.]  He points out that three of the overt acts identified in the second superseding indictment allege that he participated in controlled buys initiated by a confidential informant[2] and that the remaining overt acts that mention him "are [based upon] information acquired solely from CI(s), without any further evidence to support the accusations."  [*Id.* at 2-3.]  Craig maintains that "to mount an adequate defense, [he] must have notice of where the information regarding his alleged criminal conduct is coming from – he must have access to the identity of the CI(s)."  [*Id.* at

---

[1] To be clear, I take no view on whether Craig would be entitled to a jury instruction on entrapment, as such a decision depends on whether the defense has produced sufficient evidence at trial.  *See United States v. Dixon*, 910 F.3d 1322, 1348 (11th Cir. 2018) (recognizing that whether a defendant is entitled to an entrapment instruction depends on whether there is sufficient evidence from which a reasonable jury could find entrapment) (citing *Mathews*, 485 U.S. at 62).

[2] Craig specifically identifies Overt Acts 108 and 118.  [Doc. 2302 at 2-3.]

14

5.]  He further argues that unless the government discloses the identity of the relevant confidential informant(s), he will be denied the opportunity to question the informant or informants' motivations for cooperating with the government and/or to determine whether the informant received any benefit in exchange for cooperation.  He finally maintains that the failure to disclose "denies [him] his fundamental right to confront those offering evidence against him."  [*Id.*]

The government opposes the motion, chiefly on the basis that it intends to call any confidential informant directly involved with Craig as a witnesses at trial. [Doc. 2496 at 2-4.]  The government further states that to the extent that any information might constitute *Brady* material, it is aware of its obligation to disclose the information and will comply with that obligation "forthwith."  [*Id.* at 3.] Likewise, the government states that information that falls under *Giglio* (such as information about payments, promises, criminal histories) will be disclosed at the time that *Jencks* material is released, which will be before trial.  [*Id.*]

As a threshold matter, the Court observes that this is the second motion that Craig has filed seeking the identity of confidential informants.  [*See* Doc. 950.]  In the motion presently before the Court, Craig makes the same arguments as he did the first time around.  The Court rejected those arguments, *see United States v. Craig*, No. 1:16-CR-145-TWT-JKL-1, 2017 WL 10410307, at *8-9 (N.D. Ga. Oct.

26, 2017), *report and recommendation adopted*, 2018 WL 5016501 (N.D. Ga. Oct. 16, 2018), and sees no reason to depart from its reasoning here.

As the Court previously explained, the government has a limited privilege to withhold the identity of confidential informants  *United States v. Flores*, 572 F.3d 1254, 1265 (11th Cir. 2009).  "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."  *Flores*, 572 F.3d at 1265 (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)).  Courts in this Circuit consider the following three factors in evaluating whether the government should be required to reveal the identity of informants:  "(1) the extent of the CI's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the CI; and (3) the government's interest in nondisclosure." *United States v. Razz*, 240 F. App'x 844, 847 (11th Cir. 2007).  In balancing these interests, the Court must take into account "the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony."  *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991).

16

These concerns surrounding the disclosure of an informant's identity are generally inapplicable, however, where the government intends to call the informant as a witness at trial. *See Banks v. Dretke*, 540 U.S. 668, 697 (2004) ("The issue of evidentiary law in *Roviaro* was whether (or when) the Government is obliged to reveal the identity of an undercover informer the Government does *not* call as a trial witness."); *United States v. Rook*, No. 1:15-CR-380-SCJ, 2016 WL 2344877, at *3 (N.D. Ga. May 3, 2016); *United States v. Pineda*, No. 1:11-CR-006-CAP-JFK, 2012 WL 2906758, at *44 (N.D. Ga. June 4, 2012) ("Neither the Federal Rules of Criminal Procedure, *Brady*, the *Jencks* Act, or *Giglio* require the disclosure of information related to a testifying witness any earlier than the Government has offered to make disclosure in this case."), *adopted*, 2012 WL 2907447 (N.D. Ga. July 16, 2012); *United States v. Elder*, No. 1:10-CR-132-RWS-AJB, 2010 WL 5656687, at *6 (N.D. Ga. Dec. 16, 2010) (explaining that "the concerns in *Roviaro* are not directly applicable" where the government informs the court that the confidential informant will testify at trial), *report and recommendation adopted in relevant part*, 2011 WL 294507 (N.D. Ga. Jan. 27, 2011); *United States v. Mendoza*, No. 1:05-CR-380-RWS-ECS, 2005 WL 8159713, at *1 (N.D. Ga. Sept. 9, 2005) ("[A]s the Government intends to call these

17

informants at Defendant's trial, it is not required to disclose the identities of the informants at this time.").

Here, the government has indicated that it intends to call any confidential informant directly involved with Craig as a witness during the trial and that prior to trial, it will disclose the identity of the informant and provide any related *Jencks*, *Brady*, and *Giglio* materials. [Doc. 2496 at 2-4.] In light of this representation, the Court will not require the government to disclose the identity of the confidential informant at this time.

The Court additionally concludes (as it did in relation to Craig's fist motion to disclose) that Craig has not met the second factor identified above—*i.e.*, a direct relationship between his defense and the probable testimony of the informant. The burden is on the defendant to show that the informant's testimony would significantly aid in establishing an asserted defense. *United States v. Johnson*, 702 F. App'x 815, 816 (11th Cir. 2017) (citing *Gutierrez*, 931 F.2d at 1491). "Mere conjecture about the possible relevance of the testimony is insufficient to compel disclosure." *Id*.

Craig points out that the second superseding indictment indicates that confidential informants participated directly in criminal activity; however, he does not connect any defense to the probable testimony of the informants. Rather, he

states that early disclosure "is essential to prepare any competent defense" and that delayed disclosure "denies his fundamental right to confront those offering evidence against him." [Doc. 2302 at 5.] This is insufficient. He has not indicated what information he believes he would obtain from any confidential informant or how it would materially support his defense. Moreover, because the government has represented that it will call the confidential informants at trial, he will not be denied the opportunity to confront the witnesses.

For the foregoing reasons, then, Craig's motion to reveal the identity of confidential informants is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Craig's Motion to Dismiss Indictment on Grounds of Entrapment [Doc. 2272] be **DENIED** and it is **ORDERED** that his Motion to Reveal Identity of Confidential Informants [Doc. 2302] is **DENIED.**

There are no matters pending for Defendant Craig (1) before the undersigned, this matter as to this defendant remains **CERTIFIED READY FOR TRIAL**.

19

**IT IS SO ORDERED AND RECOMMENDED** this 28th day of July, 2019.

_____

JOHN K. LARKINS III
United States Magistrate Judge