# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| SHAUNTAY CRAIG, | : | MOTION TO VACATE |
| Fed. Reg. No. 26470044, | : | 28 U.S.C. §2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:16-CR-145-TWT-JKL-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:23-CV-2146-TWT-JKL |

## FINAL REPORT AND RECOMMENDATION

Movant Shauntay Craig, through his wife and next friend Sheila Craig, has filed the instant *pro se* motion to vacate pursuant to 28 U.S.C. §2255. (Doc. 3709). Movant seeks to challenge the constitutionality of his conviction and sentence following his guilty plea in the Northern District of Georgia.

## I.    RELEVANT PROCEDURAL AND FACTUAL HISTORY

### A.    Factual History

Movant was a long-time and long-term member of a national street and prison gang, a highly structured and hierarchical organization known as the Gangster Disciples ("G.D."). (Doc. 1750; Doc. 3399 ("Plea Tr.") at 27-28). The gang's racketeering activities included large-scale drug trafficking, robbery, carjacking, credit card fraud, insurance fraud, bank fraud, arson, extortion, and violence, including murder. (Plea Tr. at 27).

Movant was in a leadership position as "Board Member," which was the highest rank within the organization other than the Chairman, and as such Movant had authority over all the G.D. across the United States. (Doc. 1750 at 3, 11; Plea Tr. at 26-28; Doc. 3376, Presentence Investigation Report ("PSR") ¶¶35, 36). As a leader, Movant personally participated in the most serious of the gang's activity – including, *inter alia*, orchestrating the murder of a witness in a criminal proceeding to prevent her from testifying as a cooperating witness against another gang member. (Plea Tr. at 28-29; PSR ¶¶45-49). Movant also promoted a culture of threatened violence within the G.D., by: threatening other participants in the witness's murder with harm if any of them cooperated against Movant in connection therewith; making it known to subordinates that serious infractions against gang rules – especially its prohibition against cooperating with law enforcement – could be punished with violence, including murder; engaging in extensive drug trafficking, which encompassed at least dozens of pounds of marijuana and multiple kilograms of heroin, cocaine, and methamphetamine; and helping to organize a campaign of extortion against a celebrity rapper, including threats of violence not only to the rapper but also against club owners and music promoters who did business with the rapper. (Plea Tr. at 29-31; PSR ¶¶80-81, 88-95, 100-112).

**B.** **Procedural History**

On October 24, 2018, a federal grand jury in the Northern District of Georgia returned a second superseding indictment and charged Movant and thirty-three co-defendants with crimes related to their roles in the G.D.[1] (Doc. 1750 ("Indictment"); Plea Tr. at 27-28).  Movant and one other Board Member held the highest ranking G.D. positions of all the Defendants named in the indictment.  (Indictment at 11-14). Movant specifically was charged with conspiracy to engage in racketeering activity under the Racketeer Influenced and Corrupt Organizations Act ("RICO") in violation of 18 U.S.C. §§1962(d) and 1963(a) (Count One), and conspiracy to possess with intent to distribute at least 500 grams of methamphetamine (Count Twenty-three).  (*Id.* at 1-46, 55-56).  The indictment provided that the racketeering activities with which Movant was involved included, among other things, organizing and managing a drug trafficking network for distributing large quantities of heroin, high grade marijuana, and methamphetamine; running a "stash house" in which firearms and illegal drugs were stored; attempting to extort the celebrity rapper; and personally arranging the murder plot which did, in fact, result in the cooperating witness's murder.  (Indictment ¶¶5, 6, 13, 16, 18, 19, 44, 60, 64, 65, 67, 71, 73, 77, 108, 112, 115, 125, 138).

---

[1]    The original indictment was filed on April 28, 2016 [Doc. 1] and the first superseding indictment was filed on September 26, 2018 [Doc. 1586].

During a pretrial conference on December 3, 2018, the Court informed counsel for all Defendants that there would be two groups for trial, with "firm beginning trial dates" of April 1, 2019 for Group 1 and September 3, 2019 for Group 2. (Doc. 1978). Movant was placed in Group 2 and therefore was set to begin trial on September 3, 2019. (Doc. 1974; *see also* Docket Entry on May 7, 2019 (notice of trial date for Group 2, including Movant)). After preliminary proceedings, jury selection for Group 1 occurred on April 9, 2019 [Doc. 2312], and the trial began on April 15, 2019 and continued through May 16, 2019. (Docs. 2327-30, 2332-34, 2337, 2339-42, 2345-47, 2349-50, 2357, 2360-61, 2363, 2365-67, 2369, 2374-75, 2378, 2385, 2389-90, 2394, 2405, 2408, 2413, 2415, 2419-20, 2424, 2429, 2431, 2433-35).

By appointment, Robert H. Citronberg represented Movant for over two years – from October 4, 2016, until December 17, 2018 – during which he filed numerous motions on Movant's behalf. (Docs. 550, 730, 731, 732, 763, 947-958, 1060-62, 1143). After Movant requested new counsel [Doc. 2004], on December 17, 2018, the Court appointed Manubir S. Arora [Doc. 2019, 2020], and Mr. Arora and his associate at the time, Eileen Nicole Moorman, represented Movant during plea negotiations through sentencing. (Docs. 2004, 2019, 2020, 3367). After Mr. Arora reviewed the indictment, the majority of relevant discovery, and met with Movant on several occasions, Mr. Arora contacted Kim Dammers, the lead Assistant United

States Attorneys ("AUSA") prosecuting the case, in an earnest attempt to negotiate a plea as Movant had requested. (Doc. 2662 at ¶¶2, 12; Doc. 3446 at 7).

1.   Plea Negotiations

Over several months Mr. Arora and AUSA Dammers went back and forth regarding a potential plea, and the first offer "kicked around" was thirty-two years.[2] (*See* Doc. 3504, August 8, 2019, Chambers Conference Transcript ("CC Tr.") at 5; Doc. 3446, August 19, 2019, Motion to Withdraw hearing transcript part 1 ("MTW Pt. 1 Tr.") at 5-7; Doc. 3448, Aug. 19, 2019 Motion to Withdraw hearing transcript part 2 ("MTW Pt. 2 Tr.") at 8, 9). The plea negotiations lasted for months, and at no time during those negotiations did the Government provide Mr. Arora with a date by which they would have to finalize an agreement. (Doc. 2662 at ¶¶3, 5). According to the Government, however, there never was an actual offer for thirty-two years; instead, AUSA Dammers had agreed to run that number by her supervisors and told Mr. Arora that she may be able to "sell that." (MTW Pt. 2 Tr. at 5-6). But Mr. Arora "never communicated that they got to" thirty-two years, and when it was getting close and after the Government had learned "some other things about Mr. Craig and his activities," the Government told Mr. Arora that without

---

[2]   Unless otherwise indicated, the facts relating to the plea negotiations were relayed by Mr. Arora and/or the Government during the August 8, 2019, chambers conference [Doc. 3504], Mr. Arora's motion to withdraw [Doc. 2662], and the hearings in connection therewith [Docs. 3446, 3448].

some cooperation from Movant the Government was not inclined to enter into a plea agreement. (*Id.* at 6).

Meanwhile, sometime in mid-July Mr. Arora had a discussion with AUSA Dammers that left him with the impression that the Government possibly could come down to thirty-one years. (CC Tr. at 5-6; *see also* Doc. 2662 at ¶5; MTW Pt. 1 Tr. at 5). Based on this discussion and in anticipation of a meeting between Ms. Moorman and Movant, on July 31, 2019, Ms. Moorman drafted a letter for Movant to sign in which Movant would agree to the thirty-one years Mr. Arora believed would be offered by the Government. (Doc. 2662 at ¶6; Doc. 3709-1 at 56-57). The letter also advised Movant about the status of the evidence and potential witnesses, and identified thirty-six cooperating witnesses who conceivably could testify against Movant at trial. (Doc. 3709-1 at 56-57). Movant signed the letter, acknowledging that he read and understood its contents. (Doc. 3709 at 57). Despite Mr. Arora's belief that they were close to a deal, however, the Government notified Mr. Arora on August 7, 2019, that there were no pending plea offers and that negotiations had ceased. (CC Tr. at 7-8; Doc. 2662 at ¶9).

With trial to set to begin on September 3, 2019, Mr. Arora requested a status conference, which was held in chambers on the same day as the pretrial conference on August 19, 2019. (Doc. 2662 ¶¶9, 13; Doc. 2707). Mr. Arora explained to the Court the history of the plea negotiations and his frustration with the fact that he

mistakenly thought that Movant and the Government were close to a deal, he had spent a lot of time and effort trying to convince Movant to agree to thirty-plus years in prison, without warning the Government unilaterally decided that negotiations would cease, and Movant lost a significant amount of time that he could have been preparing for trial.  (CC Tr. at 4).

Mr. Arora also told the Court that he knew from the beginning that the case should settle because he was aware of how much time and effort the Government spends on gang cases, and because there was a significant amount of evidence against Movant – including the fact that there were at least twenty-two "snitches" cooperating with the Government.  (CC Tr. at 4-7).  Mr. Arora explained that he was frustrated with the sudden end to the plea negotiations because the case "shouldn't be a trial" and ultimately would end up in a "slow guilty plea."  (*Id.*).  After the Government clarified its position that the parties had never agreed on a number that would have been approved, the District Judge told the parties that he could not be involved in plea negotiations or force either party to do anything, and that he was ready to take a plea or proceed to trial.  (*Id.* at 9).

Right after the chambers conference Mr. Arora and Ms. Moorman went to visit Movant, who was "rightfully upset" upon being told that the plea he had expected no longer was valid.  (Doc. 2662 at ¶¶10-11).  On that same day Mr. Arora moved to withdraw as counsel for Movant, indicating that based on the failed plea

negotiations Movant had lost confidence in counsel.  (*See generally* Doc. 2662).

During the first part of the hearing on the motion to withdraw on August 19, 2019,[3]

Mr. Arora reiterated the events he had recounted at the chambers conference and

indicated that Movant was now "stuck in having to have a trial for no reason" even

though Movant wanted to enter a plea, that Movant was not happy and no longer

trusted counsel, and that Movant wanted to address the Court directly. (MTW Part 1

Tr. at 6).  Movant echoed those same facts and requested a new attorney for trial.

(*Id.* at 6-10).  Thereafter, AUSA Dammers reiterated that there was never an offer

to which the parties agreed and for which she would have been able to obtain

approval, but she then made a firm, pre-approved plea offer of forty years, which

required Movant to cooperate.  (*Id.* at 5-6, 11).

The District Court denied Mr. Arora's motion to withdraw and told the parties

they were to move forward with the trial beginning with jury selection on September

3, 2019.  (*Id.* at 11-13).  Mr. Arora then asked for more time to file any other

outstanding motions, which he stated was the only issue since he "erroneously

thought they had a deal."  (*Id.*).  In granting the motion for an extension, the District

Judge responded: "Well, I don't know that it was your error at all, Mr. Arora.  You

---

[3]      The first part of the motion to withdraw hearing took place before the Court
with only Movant and counsel present [MTW Pt. 1].  The Court brought in the
attorneys for the Government for the second part of that hearing [MTW Pt. 2].  (*See*
MTW Pt. 2 at 4-5).

thought you had a deal.  Mr. Craig thought y'all had a deal, but you didn't.  You didn't have a deal because the Government hadn't agreed to it." (*Id.* at 15).

    2.    <u>The Plea</u>

Four days before the trial, on August 30, 2019 Movant agreed to the forty-year offer and entered a negotiated guilty plea to Count One.  (Doc. 2795-1 "(Plea Agreement")).  In the plea agreement, the Government agreed to recommend the maximum downward level adjustment for Movant's acceptance of responsibility [Plea Agreement ¶14]; Movant and the Government agreed to jointly recommend forty years of imprisonment [*Id.* ¶17];[4] Movant agreed that the recommendations, stipulations, and guideline computations were not binding on the Court [*Id.* ¶27]; and the plea agreement contained an appellate and collateral waiver which prohibited Movant from appealing or raising in a §2255 motion any ground other than claims of ineffective assistance of counsel [*Id.* ¶28]. In the plea agreement and during the plea colloquy Movant affirmed that there were no other agreements, promises, or representations between Movant and the Government, he had read the agreement in its entirety, carefully reviewed every part of it with counsel, understood

---

[4]    The typed plea agreement did not include the fact that Movant agreed to the forty-year sentence; however, during the plea hearing the Government added a hand-written term to that effect, which was initialed by Movant and counsel in open court. (Plea Agreement ¶17;  Plea Tr. at 12, 15).

the terms and conditions therein and voluntarily agreed to them, and he was fully satisfied with his counsels' representation.  (*Id.* ¶30 and 14; Plea Tr. at 4, 16-17).

Also during the plea colloquy, Movant stated under oath that:  he understood the constitutional rights he was waiving by pleading guilty; he understood the charges to which he was entering his guilty plea and the consequences thereof, including the maximum penalty of life imprisonment; he agreed with the Government's description of the plea agreement; his decision to plead guilty was not the product of threats, force, or promises other than those contained in the agreement; he was not advised by anyone not to tell the complete truth; he had sufficient time to discuss the charges and his case with counsel and had conferred with counsel about how the sentencing guidelines might apply; and he understood that the guidelines were only advisory, that it was not possible to determine the exact guidelines for his case until after the PSR was completed, and that the Court had authority to impose a sentence more or less severe than the guidelines range.  (Plea Tr. at 6-8, 15-17, 22).  Both Mr. Arora and Ms. Moorman also affirmed to the Court that they made no promise to Movant that he would receive a particular sentence if he entered a guilty plea, and that they did not know of any bargain affecting the plea other than what had already been discussed in court.  (*Id.* at 17-18, 23).  The Court emphasized that it might not accept the plea agreement's recommendations but that

Movant would still be bound by his guilty plea, which Movant stated that he understood.  (*Id.* at 25).

After the Government summarized the factual basis for the plea, Movant did not disagree with that synopsis and affirmed that he was, in fact, guilty of the offense to which he was entering a plea.  (*Id.* at 28-31).  The Court found that Movant was competent to understand the charges against him and the consequences of the guilty plea, that his decision to plead guilty was, in fact, voluntarily made with full knowledge of the charges against him and the consequences thereof, that the plea was "free of any coercive influence of any kind," and that "no promises of any kind" had been made to Movant by anyone except what was incorporated in the plea agreement.  (*Id.* at 32).  The Court subsequently sentenced Movant to the parties' recommended sentence of forty years.  (Doc. 3358; Doc. 3391 ("Sent. Tr.") at 15).

3.    Appeal

Through new counsel, Movant filed a direct appeal with the Eleventh Circuit and argued that he was coerced into signing the plea agreement.  *United States v. Craig*, No. 21-10361, 2022 WL 613727, at *2 (11th Cir. Mar. 2, 2022) (per curiam).[5]

---

[5]    Movant also raised an enumeration of error that the Court violated Rule 11 of the Federal Rules of Criminal Procedure by failing to ensure that Movant understood that the appeal waiver provision in the plea agreement applied to an appeal of his conviction and to the forfeiture part of his sentence.  *Craig*, 2022 WL 613727, at *2. Movant, however, did not raise that issue in his §2255 motion and it will not be discussed here.

Specifically, Movant claimed that his plea was not voluntary based on "(1) the 'pressure' he was under 'after the failed plea negotiations which caused him to lose a plea of [thirty-one] years'; [and] (2) the 'rift in the relationship with his attorneys' caused by the failed plea negotiations[.] . . ." *Id.* at *3. On March 2, 2022, the Eleventh Circuit found that Movant knowingly and voluntarily entered into the plea and affirmed his convictions and sentences. *Id.*

4.   The §2255 Motion

Movant filed the instant §2255 motion on May 10, 2023 through his next friend and wife[6] and raises two grounds of ineffective assistance of counsel, because counsel: (1) allowed a "favorable plea deal of 31 years to be lost and/or lapse, leading to accepting a lengthier 40 year plea deal, which prejudice [sic]" Movant; and (2) gave Movant faulty advice that if he accepted the plea counsel would help him to "regain a 31" year plea – apparently, according to Movant, by helping him file an ineffective assistance claim. (Doc. 3709-1). For the following reasons, it is **RECOMMENDED** that the instant §2255 motion be **DENIED**.

---

[6]   After Mrs. Craig complied with this Court's order directing her to submit more details warranting her next friend status, I found that her response provided a minimally adequate justification that would allow her to proceed as a next friend on Movant's behalf. (Docs. 3721, 3722, 3724). The Government did not oppose Mrs. Craig's request to proceed by next friend.

## II.    DISCUSSION

**A.    Standard of Review**

Congress enacted §2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to §2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Despite Movant's argument to the contrary and as further discussed below, Movant's

§2255 motion and the record in this case conclusively show that Movant is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

**B.    Movant's Ineffective Assistance Claims are Barred.**

    1.    Movant Cannot Relitigate the Claims Raised on Appeal.

As discussed in Section I.B.3, Movant raised on appeal that his plea was involuntary based on the "pressure" of losing the thirty-one-year agreement and the "rift" in the relationship with counsel caused by the failed plea negotiations. *Craig*, 2022 WL 613727, at *3.  The Eleventh Circuit rejected both claims, finding that there was "no evidence that [Movant's] guilty plea resulted from anything other than his desire to avoid the risk of conviction at trial." *Id.*   In finding that Movant's plea was voluntary, the Eleventh Circuit noted that "'all pleas of guilty are the result of some pressure or influences on the mind of the defendant,' . . . but that doesn't make the plea coercive." *Id.* (citations omitted).

Matters decided on direct appeal cannot be re-litigated in a §2255 motion. *Hidalgo v. United States*, 138 F. App'x 290, 291 (11th Cir. 2005) (per curiam).  And matters that could have been raised on direct appeal, but were not, are largely foreclosed.  *Id.*; *see also Lynn v. United States*, 365 F.3d 1225, 1233-35 (11th Cir. 2004) (per curiam).  Ineffective assistance of counsel claims generally constitute exceptions to this rule because those claims cannot be fully litigated on direct appeal

14

and collateral review allows for adequate development and presentation of relevant facts in connection therewith. *Massaro v. United States*, 538 U.S. 500, 505-09 (2003).

But even an ineffective assistance claim can be foreclosed where the underlying claim was rejected on appeal. Indeed, "even if the arguments are different," a defendant "cannot repackage the same facts as a different argument and claim that his new, different argument could not have been raised before." *Hidalgo*, 138 F. App'x at 294; *see also United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("A rejected claim does not merit rehearing on a different, but previously available, legal theory."); *Felix v. United States*, No. 2:19-cv-268-FtM-38MRM, 2019 WL 4305483, at *2 (M.D. Fla. Sept. 11, 2019) ("Felix 'cannot repackage the same facts as a different argument' because any new arguments based upon facts that previously existed would now be procedurally barred.") (quoting *Hidalgo*, 138 F. App'x at 294).

Movant argued on appeal that his plea was involuntary because of the failed plea negotiations – which is precisely what he argues here, albeit under the guise of ineffective assistance. Because Movant's ineffective assistance claims simply "repackage" the enumerations of error he raised on appeal, Movant cannot relitigate those alleged errors. *See, e.g., Obie v. United States*, No. 1:18-CR-0007-WMR-JKL, 2023 WL 5987404, at *6 (N.D. Ga. Feb. 2) ("Movant cannot bring his ineffective

15

assistance of counsel claims in this proceeding because" he "simply has 'repackaged' the claim he raised on appeal."), *report and recommendation adopted*, 2023 WL 5501216 (N.D. Ga. Aug. 25, 2023); *Williams v. United States*, No. 2:19-cv-271-FtM-38-MRM, 2020 WL 6382026, at *4 (M.D. Fla. Oct. 23, 2020) (finding ineffective assistance of counsel claim procedurally barred because the predicate issue was raised on appeal and defendant cannot "repackage" the same facts as a different argument on collateral review); *Millender v. United States*, No. 1:16cv45-MHT, 2018 WL 1555653, at *4-5 (M.D. Ala. Mar. 9) (finding claim raised on appeal that trial court erred in denying motion to withdraw voluntary plea barred §2255 claim that ineffective assistance resulted in involuntary plea), *report and recommendation adopted,* 2018 WL 1546364 (M.D. Ala. Mar. 24, 2018); *cf. United States v. Malara*, No. 22-10856, 2023 WL 2128801, at *3 (11th Cir. Feb. 21, 2023) (per curiam) (finding "repackaged" sentencing challenge under the "guise of an ineffective-assistance claim" barred by appellate waiver).

      2.    <u>The Law of the Case Bars Movant's Claims</u>

Along those same lines, because the Eleventh Circuit found Movant's plea was knowing and voluntary, the law of the case bars this Court's reconsideration of the issue. Under the law of the case doctrine "both district and appellate courts are usually bound to follow a prior appellate decision in the same case." *United States v. Spellisy*, 842 F. App'x 516, 518 (11th Cir. 2021) (per curiam); *see also*

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) ("'As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (citations omitted) (alteration in original). The doctrine precludes the courts from revisiting issues not just decided explicitly in the prior appeal, but also issues decided "by necessary implication." *Welch v. United States*, 958 F.3d 1093, 1098 (11th Cir. 2020) (per curiam); *accord United States v. Barton*, 834 F. App'x 529, 530 (11th Cir. 2020) (per curiam). And the law of the case applies to both prior factual findings and conclusions of law. *Barton*, 834 F. App'x at 530.[7]

Just as he did on appeal, Movant again attempts to argue that his attorneys pressured him into entering the plea, and he raises more arguments as to why the plea was involuntary. Because the Eleventh Circuit decided these issues explicitly or necessarily by implication, however, this Court should not consider them.[8]

---

[7]    There are three exceptions to the law of the case doctrine, none of which apply here. *See Spellissy*, 842 F. App'x at 518 (providing exceptions).

[8]    I also would note that law of the case also potentially bars Plaintiff's first ineffective assistance of counsel claim based on the District Court's finding that there was no error by Mr. Arora in connection with the thirty-one year offer [MTW Part 1 Tr. at 15], since it necessarily follows that Mr. Arora could not have been ineffective if he committed no error.  Nevertheless, and out of an abundance of caution, I will review the substance of Movant's ineffective assistance claim on the merits.

C.    **Counsel Was Not Ineffective.**

Even if Movant's ineffective assistance claims were not foreclosed and/or the rule of the case doctrine does not apply, Movant's claims still fail. Movant's brief sets forth his arguments in somewhat of a stream of consciousness manner, rendering discussion of many of the specifics difficult. What's more, several of Movant's arguments rely on his own self-serving interpretations of the facts rather than the facts themselves.[9] Finally, Movant's and Mrs. Craig's after-the-fact self-serving affidavits – which constitute the opposite of what Movant describes as "substantial" and "reliable" evidence – cannot rebut the clear evidence in the record that Movant concedes "appears to contradict his claims." (Doc. 3709 at 5). The bottom line is that Movant's self-serving affidavits and characterizations of the evidence are not credible, the record conclusively contradicts Movant's claims, and Movant has failed to show that his plea was not voluntary or that he received ineffective assistance of counsel.

---

[9]    Throughout the §2255 motion, Movant states as "facts" his own characterizations of the text messages and emails between Mrs. Craig and counsel, as well as Movant's and Mrs. Craig's self-serving statements and speculation contained in their affidavits. (*See, e.g.,* Doc. 3709-1 at 10-11, 14-15, 35-39, 41-45, 63-100, 105-25) (concluding as fact that Mr. Arora "influenced" Movant to take the plea since in the text messages he "never rebutted" Mrs. Craig's statement that he did so). Movant's interpretations of the facts, however, are belied by the record, and I do not find credible or persuasive Movant's contentions that Mr. Arora, Ms. Moorman and/or the AUSAs – all officers of the Court – engaged in any type of nefarious behavior.

1.   Ineffective Assistance of Counsel Standard

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010).  "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense."  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688).  To establish deficiency, a petitioner must establish that "counsel's representation 'fell below an objective standard of reasonableness.'"  *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688).  To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another."  *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018); *see also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) (per curiam) ("Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course.").  An ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'" *McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (per curiam) (citations

omitted), and the court may "dispose of [the] ineffectiveness claim[] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992); *see also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate counsel's ineffective assistance after entering a plea, the Movant must show that "there is a reasonable probability that, but for counsel's deficient performance, he would have insisted on going to trial[,]" *id.* at 59, must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *Chandler v. United States*, No. 20-13521, 2022 WL 445762, at *2 (11th Cir. Feb. 14) (per curiam) (internal quotation marks and citations omitted), *cert. denied*, __ U.S. __, 143 S. Ct. 174 (Oct. 3, 2022); *see also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) (per curiam) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail."). "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*."

*Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted); *see also Chandler*, 2022 WL 445762, at *2 ("*Post hoc* assertions from a defendant about how he would have pleaded, but for his attorney's alleged deficiencies, are insufficient to allege an ineffective-assistance-of-counsel claim.").

    2.    <u>Movant's Ineffective Assistance Claims are Belied by the Record.</u>

Movant first argues that counsel was ineffective for letting the thirty-one year "deal" lapse, forcing Movant to agree to a longer sentence. This issue, however, was discussed extensively before Movant agreed to the forty-year plea he challenges here.

The record makes clear that there was no "deal" on the table – and in fact, the Government never made an offer for thirty-one years; nor was any such offer authorized, or could be authorized, by AUSA Dammers' supervisors.[10] At worst, Mr. Arora misunderstood that there was any such plea offer and/or that they could reach an agreement for that amount of time, and at the very least Mr. Arora believed that they were close to a deal. The Court already found that this misunderstanding

---

[10] Movant places great importance on emails containing the plea negotiations between the Government and Mr. Arora, and presumes that any emails that exist would confirm that a thirty-one year deal was offered by the Government. (*See, e.g.,* Doc. 3709-1 at 10, 15). I have reviewed those emails, as did the District Court in connection with Mr. Arora's motion to withdraw, and contrary to Movant's presumption those emails verify the Court's finding that the Government made no such offer. (Doc. 2777-1).

was not Mr. Arora's fault, and if anything Mr. Arora went above and beyond how any reasonable counsel in the same situation would have performed.

It is not clear, and Movant does not provide, what more Mr. Arora could have done, as he certainly could not force the Government to honor a nonexistent offer. Moreover, even if the Government had agreed to a thirty-one-year plea, any such agreement would not be binding on the Court – which Movant swore under oath that he understood – and to presume that the Court would sentence Movant to thirty-one years is purely speculative. Movant, therefore, has failed to show that counsel's actions constituted anything less than professional, reasonable conduct.

Likewise, nothing in the record suggests that counsel ever promised Movant that if Movant entered into the forty-year plea counsel would help Movant "get back" the thirty-year deal[11]; nor could counsel have done so.[12] Additionally, Movant's

---

[11]    Despite Movant's claims to the contrary, nothing in the text messages supports Movant's "fact" that Mr. Arora promised Movant that they could "get back" a better plea offer if he agreed to forty years. Instead, the text messages establish that Mr. Arora simply offered to assist Movant with a §2255 motion based on the same facts Mr. Arora raised during the chambers conference and the hearing on the motion to withdraw.

[12]    Movant appears to conclude that Mr. Arora's agreement to submit an affidavit in support of an ineffective assistance claim against him constitutes an admission that he was, in fact, ineffective. But even if Mr. Arora told Movant that he was ineffective, Movant still must present evidence of any such alleged incompetency and that Movant was prejudiced thereby, which he has not done. *See Hector v. United States*, No. 1:12-cr-183-TWT-JSA, 2019 WL 3209448, at *6 (N.D. Ga. May 9), *report and recommendation adopted*, 2019 WL 3203009 (N.D. Ga. July 16, 2019), *aff'd*, 822 F. App'x 981 (11th Cir. 2020) (per curiam); *see also Valenzuela v.*

22

proclamation that counsel instructed him not to mention that alleged promise during the plea colloquy also is belied by the record. And significantly, because there is a strong presumption that statements made during the plea colloquy are true, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), where, as here, a movant's claim of ineffective assistance of counsel is in direct conflict with his statements under oath, he has a strong burden to show that those sworn statements were false. *Patel v. United States*, 252 F. App'x 970, 974-75 (11th Cir. 2007) (per curiam); *see also United States v. Frady*, 456 U.S. 152, 164, 166 (1982) ("Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume that he stands fairly and finally convicted."). Movant simply has not met this burden.

Indeed, as set forth previously above in Section I.B.2, during the plea colloquy Movant stated under oath that he was satisfied with counsel and no one threatened or forced him to plead guilty, made any promise that caused him to enter the plea other than in the plea agreement, or advised him not to tell the truth at the plea hearing. Movant's after-the-fact contradictory self-serving statements are insufficient to meet the heavy burden that would overcome the presumption of truth of these sworn statements. *See, e.g., Baker v. United States*, 847 F. App'x 761, 765

---

*Keyser*, No. 19 Civ. 03696 (KMK) (JCM), 2023 WL 8788810, at *14 (S.D.N.Y. Nov. 18) (finding that "defense counsel's admission that he was ignorant of the law" did not change the fact that the petitioner failed to establish that he provided ineffective assistance), *report and recommendation adopted*, 2023 WL 8780157 (S.D.N.Y. Dec. 19, 2023).

(11th Cir. 2021) (per curiam) (finding no prejudice where "[a]side from his belated, self-serving statements, Baker presented no evidence that he would not have pleaded guilty but for his counsel's allegedly erroneous advice"); *United States v. Perkins*, No. 00-1220, 2000 WL 1425123, at *1 (2d Cir. 2000) (finding district court properly found defendant's "later self-serving statements" did not satisfy his burden to raise an issue regarding the voluntariness or validity of plea where during plea allocution defendant swore under oath that, *inter alia*, he had read indictment and plea agreement, discussed them with his attorney, understood the charges, and confirmed that no one had coerced him to plead guilty and was doing so of his own free will) (citations omitted); *Rensing v. United States*, No. 16-cr-442, 2021 WL 1326909, at *2 (S.D.N.Y. Apr. 8, 2021) (denying movant's ineffective assistance of counsel claim, finding "self-serving" and "conclusory" statements about attorney's purported promises during the plea negotiations were "directly contradicted by his sworn statements at [his] plea hearing"); *Evans v. United States*, No. 1:14-cr-52-TWT-JSA-3, 2018 WL 2326132, at *14 (N.D. Ga. Mar. 28) ("[D]espite Movant's present self-serving statements that she did not understand the binding plea agreement, the charges against her, or the sentence she would receive, she has not overcome the strong presumption of the veracity of her sworn statements during the plea hearing."), *report and recommendation adopted,* 2018 WL 2321983 (May 22, 2018); *see also United States v. Purnell*, 701 F.3d 1186, 1190-91 (7th Cir. 2012)

("We may reject out of hand, absent a compelling explanation, factual allegations that depend on the defendant having committed perjury at a plea hearing.").

Moreover, regardless of any previous negotiations, Movant received the sentence for which he bargained,[13] and the fact that Movant now has a change of heart does not alter the conclusion that his plea was knowing and voluntary.  *See, e.g., United States v. Melton*, 861 F.3d 1320, 1322 (11th Cir. 2017) ("Sometimes a deal, like a tattoo, does not age well and what appeared to be attractive in the past seems unattractive in the future.  But plea agreements, like most tattoos, are written in permanent ink and cannot be redrawn just because one party suffers from the plea bargain form of buyer's remorse."); *see also United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990) (per curiam) (holding that "[t]o the extent  [defendant] claimed his guilty plea was based on his attorney's estimate of the sentence . . . the claim did not warrant withdrawal of the guilty plea where [defendant] acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the court ultimately imposed"); *Abul-Aziz v. United States*, No. CRIM A 1:03CR39, 2008 WL 4238943, at *6 (N.D. W.Va. Sept. 12, 2008 ("Simply because the petitioner now says [an oral] agreement existed, does not make it so, particularly

---

[13]     During sentencing, Mr. Arora told the Court:  "So if the Court will accept the 40 years, I think we will be fine with that, based on our negotiations, regardless of all the other motions we filed in the past."  (Sent. Tr. at 13).

in light of the testimony the petitioner gave under oath at his plea hearing."), *aff'd*, 337 F. App'x 375 (4th Cir. 2009) (per curiam).

Finally, despite his dubious attempts to do so, Movant cannot show prejudice – *i.e.,* that but for counsel's ineffective assistance he would not have accepted the plea, and that a decision to reject the forty-year plea bargain and proceed to trial would have been rational. First, Movant claims that he "easily" has demonstrated prejudice because he received a "de facto life sentence which could have been obtained by going to trial," and that proceeding to trial would have allowed him to keep "all his appellate rights and substantial constitutional benefits" that he waived by entering a plea. (Doc. 3760 at 6). Movant also states that when deciding to take a plea he did not analyze the evidence; rather, his only consideration was that any sentence more than thirty-five years would be an "equivalent life sentence." (Doc. 3709-1 at 36). But a forty-year sentence is just that – forty years – and, Movant's belief that it is essentially a life sentence does not make it so. Additionally, while Movant minimizes the importance of the evidence the Government would have presented to a jury, he simply cannot ignore the weight thereof if he is to meet his burden of showing that it would have been rational to reject the plea and proceed to trial.

Had Movant proceeded to trial that evidence would have been extensive, especially since as a Board Member Movant was one of the national leaders of the

G.D., and, among many other things, controlled the substantial drug trade for the G.D.  Also, several of Movant's thirty-three codefendants had entered a plea before trial and some or all of them would have testified against him.  Rather than describe any defenses to this evidence that Movant would have presented at trial, Movant relies on conclusory statements that he would have proceeded to trial by simply stating that he would have taken "a chance at winning trial, and if not, keeping [his] option of possible [sic] winning on appeal or collateral attack."  (Doc. 3709-1 at 36). These conclusory statements, however, are insufficient to demonstrate prejudice. *See, e.g., Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (stating that to show prejudice in the context of a guilty plea a petitioner must do more than just allege he would have gone to trial; instead "he must also come forward with objective evidence that he would not have pled guilty"); *United States v. Clingman*, 288 F.3d 1183 (10th Cir. 2002) (finding mere allegations that defendant would have proceeded to trial insufficient); *Alexander v. United States*, No. 3:16cv189-MHT, 2018 WL 1555657, at *11 (M.D. Ala. Mar. 5) ("A mere allegation by the defendant that she would have insisted on going to trial but for counsel's errors is insufficient to establish prejudice.") *report and recommendation adopted,* 2018 WL 1546357 (M.D. Ala. Mar. 29, 2018).

Moreover, had Movant proceeded to trial, the Government would not have dismissed the second count against him for conspiracy to distribute

methamphetamine which, like the RICO conspiracy, also carries a maximum life sentence [21 U.S.C. §§841(a)(1), 846].   Not only could Movant have faced a cumulative life sentence after trial, but he also would not have received the maximum downward level for acceptance of responsibility.   Under all these circumstances, I cannot find that a rational person in Movant's situation would have rejected the plea. *See, e.g., Chandler*, 2022 WL 445762, at *2 (finding it would not have been rational for petitioner to reject a plea and proceed to trial where there was a substantial amount of evidence against him and he faced a potential 190-year cumulative sentence); *Orange v. United States*, No. 16-12842-A, 2017 WL 5714719, at *4 (11th Cir. Jan. 6, 2017) (finding petitioner failed to establish prejudice because he avoided a life sentence by entering a plea and during the plea colloquy the factual basis for the proffer revealed the evidence against him was overwhelming); *Diveroli v. United States*, 803 F.3d 1258, 1265 (11th Cir. 2016) (finding decision to proceed to trial would not have been rational where there was overwhelming evidence of guilt, the defendant had no valid affirmative defenses, and he faced a much higher potential sentence); *United States v. Arteca*, 411 F.3d 315, 322 (2d Cir. 2005) (finding it was not reasonably probable that defendant would have proceeded to trial despite his self-serving affidavit, since he knew the court could impose the maximum sentence and by entering plea he earned three-level reduction for acceptance of responsibility).

### III.   CONCLUSION

Based on the foregoing reasons, **IT IS RECOMMENDED** that Shauntay Craig's motion to vacate his sentence [Doc. 3709] be **DENIED WITH PREJUDICE**.

### IV.   CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Rules Governing §2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." For the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the §2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other

words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  As a result, reasonable jurists would not find "debatable or wrong" my determination that Movant's claims are barred because he raised the issues on appeal and by the law of the case doctrine, and/or he has not demonstrated ineffective assistance of counsel.  *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**SO RECOMMENDED** this 31st day of January, 2024.

_____
JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE